# EXHIBIT C

## AMENDMENT NO. 1 TO

## SECURITIES PURCHASE AGREEMENT

THIS AMENDMENT NO. 1 TO SECURITIES PURCHASE AGREEMENT ("Amendment"), is made as of this __ day of June, 2011, by and among Sallyport Holdings LLC, a Delaware limited liability company ("Purchaser"), Sallyport Global Holdings Inc., a Delaware corporation (the "Company"), Sallyport Global LLC, a Florida limited liability company and being known as Sallyport Global Inc. prior to its conversion to a limited liability company ("SGI," and together with the Company, the "Companies"), John P. DeBlasio ("John DeBlasio"), Kaseman LLC, a Virginia limited liability company ("Kaseman"), D.C. Capital Partners Investments, L.L.C., a Virginia limited liability company ("DCCPI"), The John Deblasio Charitable Trust for World Peace and Development, a charitable trust organized under the laws of Bermuda (the "Company Stockholder") and the John P. DeBlasio Trust, a business trust organized under the laws of the State of Florida (the "SGI Stockholder," and together with the Company Stockholder, each a "Seller" and collectively the "Sellers"). Capitalized terms used in this Amendment but not otherwise defined shall have the meanings set forth in that certain Securities Purchase Agreement, dated as of May 6, 2011 (the "Purchase Agreement"), by and among Purchaser, the Companies, the Sellers, Kaseman LLC (solely with respect to Sections 8.3 and 11.2 thereof) and John DeBlasio (solely with respect to Section 13.17 thereof).

## RECITALS

WHEREAS, the parties desire to amend the Purchase Agreement according to the terms set forth in this Amendment.

NOW, THEREFORE, in consideration of and subject to the mutual undertakings and agreements hereinafter set forth, the parties hereby agree as follows:

1. **Amendment.** The parties hereby ratify and affirm the Purchase Agreement and the relative rights and obligations of the parties as set forth in the Purchase Agreement, all of which shall remain in full force and effect except as otherwise expressly amended as set forth herein. After the date hereof, any reference to the Purchase Agreement shall mean the Purchase Agreement as amended or modified hereby

2. **Amendment to Third Recital.** Recital 3 of the Purchase Agreement is hereby amended and restated in its entirety to state the following:

"The Company Stockholder desires to sell to Purchaser, and Purchaser desires to purchase from the Company Stockholder, 1,550 shares of Stock (the "Purchased Stock"). The SGI Stockholder desires to sell to Purchaser, and Purchaser desires to purchase from the SGI Stockholder, the SGI Stock, all of which the SGI Stockholder has contributed or will contribute to Purchaser in exchange for Membership Interests in Purchaser pursuant to the terms contained in the Contribution Agreement."

3. **Amendment to Fourth Recital.** Recital 4 of the Purchase Agreement is hereby amended to replace the clause "8511.6 shares of Stock" in its entirety with the clause "8,450 shares of Stock".

4. **Amendment to Definitions.** The definition of "Allocation" is hereby added to the Purchase Agreement, which provides as follows:

""Allocation" shall have the meaning set forth in Section 5.2(h)."

5. **Amendment to Definitions.** The definition of "Contribution Agreement" is hereby amended and restated in its entirety to state the following:

""Contribution Agreement" shall mean the Equity Contribution Agreement between the SGI Stockholder and the Purchaser to be dated as of the Closing Date, substantially in the form attached hereto as **Exhibit A**, pursuant to which the SGI Stockholder shall contribute the Rollover Stock to Purchaser in exchange for Membership Interests in Purchaser."

6. **Amendment to Definitions.** The definition of "Joint Venture" is hereby amended and restated in its entirety to state the following:

""Joint Venture" shall mean each of Arkel Sallyport-Sudan Ltd. and Arkel Sallyport Global Ltd."

7. **Amendment to Definitions.** The definition of "Rollover Stock" is hereby amended and restated in its entirety to state the following:

""Rollover Stock" shall mean all of the SGI Stock, having an aggregate value equal to the Contributed Stock Value, and which has been or shall be contributed to Purchaser in exchange for Membership Interests pursuant to the Contribution Agreement."

8. **Amendment to Sections 2.1(a) and (b).** Sections 2.1(a) and (b) of the Purchase Agreement are hereby amended and restated in their entirety to state the following:

"(a) Subject to the terms and conditions of this Agreement, the Company Stockholder agrees to sell, assign, transfer and deliver to Purchaser all of the Purchased Stock at the Closing, free and clear of all Encumbrances, with Purchaser to purchase and acquire from the Company Stockholder the Purchased Stock. The Company shall take such action as is reasonably necessary to reflect the sale, assignment, transfer and delivery of the Purchased Stock on the books and records of the Company at the Closing and to provide to Purchaser such evidence of the same as Purchaser shall reasonably request.

(b) Pursuant to the Contribution Agreement, at the Closing, the SGI Stockholder shall contribute to Purchaser all of its rights, title and interest in and to the Rollover Stock. Purchaser and the SGI Stockholder hereby acknowledge and agree that the transfer of the Rollover Stock for the Membership Interests of Purchaser identified in the Contribution

Agreement, by reason of being part of an overall integrated transaction, is intended to qualify as an exchange under Section 721 of the Code, and the parties hereto shall file all Tax Returns or other reports, as required, consistent with such position, and shall take no contrary position, unless required to do so by applicable Law. SGI shall take such action as is reasonably necessary to reflect the contribution of the Rollover Stock on the books and records of SGI at the Closing and to provide to Purchaser such evidence of the same as Purchaser shall reasonably request. Purchaser shall take such action as is reasonably necessary to reflect the Contribution of the Rollover Stock on the books and records of Purchaser at the Closing and to provide the SGI Stockholder such evidence of the same as the SGI Stockholder shall reasonably request."

9. Amendment to Section 2.2(a). Section 2.2(a) of the Purchase Agreement is hereby amended to replace the sentence "The "Total Purchase Price" shall consist of the sum of (A) $5,500,000 (the "Base Purchase Price"), and (B) Membership Interests of Purchaser delivered to the Company Stockholder in accordance with Section 2.1(b) having an aggregate fair market value equal to $4,100,000 (which $4,100,000 shall be referred to as the "Contributed Stock Value")" in its entirety with the sentence "The "Total Purchase Price" shall consist of the sum of (A) $6,200,000 (the "Base Purchase Price"), and (B) Membership Interests of Purchaser delivered to the SGI Stockholder in accordance with Section 2.1(b) having an aggregate fair market value equal to $3,800,000 (which $3,800,000 shall be referred to as the "Contributed Stock Value")".

10. Amendment to Section 2.2(b). Section 2.2(b) of the Purchase Agreement is hereby amended to replace the sentence "The "Redemption Purchase Price" shall equal $54,900,000, plus or minus any adjustment to the Redemption Purchase Price with respect to the Working Capital pursuant to Section 2.5" in its entirety with the sentence "The "Redemption Purchase Price" shall equal $54,500,000, plus or minus any adjustment to the Redemption Purchase Price with respect to the Working Capital pursuant to Section 2.5".

11. Amendment to Section 2.3(b). The first sentence of Section 2.3(b) of the Purchase Agreement is hereby amended and restated in its entirety to state the following, and a new second sentence is hereby added to Section 2.3(b) of the Purchase Agreement as follows:

"(b) On the Closing Date, the Company shall deposit $5,000,000 (the "Trust Account Amount") of the Redemption Purchase Price that is otherwise payable to the Company Stockholder into a bank account controlled by DCCPI, and as soon as reasonably practicable thereafter, DCCPI shall transfer the Trust Account Amount, plus any interest earned on such amount while held by DCCPI, to a trust or escrow account with JPMorgan Chase Bank, National Association, or such other banking institution as shall be mutually acceptable to Purchaser and the Sellers (the "Trust Agent") pursuant to the terms of a trust account agreement in the form attached hereto as **Exhibit B**, or such other trust or escrow agreement as is substantially similar to the form attached hereto as **Exhibit B** (the "Trust Account Agreement"), and such trust or escrow account (the "Trust Account"), or the cash in the amount of the Trust Account Amount to the extent not yet deposited into the Trust Account pursuant to the terms of this Section 2.3(b), shall provide security for the payment by the Sellers of any Seller Indemnification Obligations arising with respect to a breach of Section 6.18 or a Seller Tax Liability under Section 5.2 (the

3

"Tax Obligations"); provided, however, that DCCPI shall only release the Trust Account Amount, plus any interest earned on such amount while held by DCCPI, either to the Trust Agent in accordance with this sentence or in accordance with the terms and conditions contained in Section 4 of the form of Trust Account Agreement attached hereto as **Exhibit B** as if DCCPI were "the Agent" (as such term is used in such Section). At the Company Stockholder's request, Purchaser shall reasonably cooperate and not unreasonably withhold, delay or condition consent to transfer the Trust Account to a successor trust or escrow agent, provided that the terms and conditions governing the deposit of the Trust Account with such successor trust or escrow agent are substantially similar to those provided in the Trust Account Agreement."

12. New Section 2.3(c). A new Section 2.3(c) is hereby added to the Purchase Agreement, which provides as follows:

"(c) On the Closing Date, the Company shall issue the Company Stockholder a note in the principal amount of $5,000,000 (the "Mezzanine Note") pursuant to the terms and conditions of that certain Note Purchase Agreement dated as of the Closing Date by and among BNY Mezzanine Partners, L.P., certain other "Investors," Kaseman Holdings LLC and Purchaser. The Mezzanine Note shall be issued in lieu of $5,000,000 of Redemption Purchase Price that is otherwise payable to the Company Stockholder. The Mezzanine Note shall provide security for the payment by the Sellers of any Tax Obligations. If, at any time, and from time to time, during the Taxes Survival Period, but only to the extent that the Trust Account Amount has been reduced to zero, (i) (A) Purchaser or any Purchaser Indemnified Party receives from any taxing authority of competent jurisdiction any decree, order, notice of lien or levy, notice of intent to lien or levy, notice of intent to seize property or rights to property, or other statement of collection activity that, if not satisfied, would result in monetary or other detriment to any of Purchaser or any applicable Purchaser Indemnified Party (which, for the avoidance of doubt, shall include the Company, SGI, and their respective Affiliates and Subsidiaries) ("Demand"), or (B) Purchaser or any Purchaser Indemnified Party makes a payment to any taxing authority of competent jurisdiction that relates to a Seller Tax Liability in compliance with the terms of this Agreement, whether as a result of a settlement agreed to by the Sellers or otherwise (a "Tax Payment") and (ii) Purchaser or any Purchaser Indemnified Party makes or has previously made an indemnification claim pursuant to Section 5.2 or Section 11.5 hereof relating to Taxes that are the subject of such Demand or Tax Payment (a "Claim") on behalf of itself, or a Purchaser Indemnified Party, the Company Stockholder shall, immediately upon request, in consideration for satisfaction of the applicable Seller Indemnification Obligations, assign to the Company a portion of the Mezzanine Note in a principal amount equal to the Losses associated with such Claim. Upon such assignment, the Company Stockholder shall return the Mezzanine Note marked cancelled and the Company shall issue (i) a new note to the order of the Company in a principal amount equal to such Losses (the "Company Note") and (ii) a replacement note to the Company Stockholder in a principal amount equal to the difference of (A) the principal amount of the returned Mezzanine Note and (B) the principal amount of the Company Note (such replacement note being thereafter deemed to be the Mezzanine Note and subject to this Section 2.3(c)), in each case, under and pursuant to the terms of the Note Purchase Agreement; provided, however, that Sellers shall not be deemed to have waived any rights they may have to dispute the Claim under this Agreement or with respect to any defense otherwise available to Sellers to contest the Demand in any other forum. To the extent the Company Stockholder does not

immediately make assignment of and surrender the Mezzanine Note to the Company when and as required by this Section 2.3(c), such Mezzanine Note shall automatically be deemed cancelled and replaced by the replacement Mezzanine Note and the Company Note issued by the Company in accordance with this Section 2.3(c)."

13. **Amendment to Section 2.4(b)**. Section 2.4(b) of the Purchase Agreement is hereby amended to replace the two references to "Company Stockholder" with references to "SGI Stockholder".

14. **Amendment to Section 2.4(c)**. Section 2.4(c) of the Purchase Agreement is hereby amended to replace the phrase "minus (v) the Trust Account Amount," with the phrase "minus (v) the Trust Account Amount and the amount of the Mezzanine Note,".

15. **Amendment to Schedule 2.4.** Schedule 2.4 to the Purchase Agreement is hereby amended and restated in its entirety in the form attached hereto as Exhibit A.

16. **Amendment to Section 2.6**. Section 2.6 of the Purchase Agreement is hereby amended and restated in its entirety to state the following:

"Section 2.6 Issuance of Profits Interests. Following the Closing, Purchaser shall issue Profits Interests representing no more than 5.5% of the outstanding Percentage Interests (as such term is defined in the Purchaser LLC Agreement) of Purchaser to certain members of the senior management of the Company Group, with such Profits Interests to be allocated to such individuals and in such amounts as shall be mutually agreed upon by Thomas J. Campbell and John P. DeBlasio; provided, however, that at least 1% of the outstanding Percentage Interests shall be allocated to Nicholas Gross."

17. **Deletion of Schedule 2.6**. Schedule 2.6 of the Purchase Agreement is hereby deleted in its entirety.

18. **New Section 4.12**. A new Section 4.12 is hereby added to the Purchase Agreement, which provides as follows:

"4.12 Conversion of SGI to a Limited Liability Company. Prior to the Closing, the Sellers shall cause SGI to convert from a corporation to a limited liability company, in accordance with the laws of the State of Florida and to the reasonable satisfaction of Purchaser, and shall provide Purchaser with written evidence thereof, including certified copies of all documents filed with the State of Florida in connection therewith. All references in this Agreement to SGI on or after the effective time of such conversion shall thereafter be deemed to refer to the limited liability company surviving such conversion ("SGI LLC"); all references to the "SGI Stockholder" on or after the effective time of such conversion shall thereafter be deemed to refer to the member of SGI LLC; and all references to the "SGI Stock" on or after the effective time of such conversion shall thereafter be deemed to refer to the membership units in SGI LLC (the "SGI Units")."

19. **New Section 4.13**. A new Section 4.13 is hereby added to the Purchase Agreement, which provides as follows:

5

"4.13 Merger with Kaseman. The Sellers, the Companies, John DeBlasio, Kaseman and Purchaser acknowledge and agree that as soon as reasonably practicable following the Closing, Purchaser will be merged with and into the parent company of Kaseman, Kaseman Holdings, LLC, and that all such parties to this Agreement shall support, and shall cause all of their Affiliates to support, any such merger, provided that the valuation of the Company Group in such consolidated entity with Kaseman (excluding International Development Solutions LLC) represents at least 51% of the combined post-merger valuation of such consolidated entity."

20. New Section 4.14. A new Section 4.14 is hereby added to the Purchase Agreement, which provides as follows:

"4.14 Post-Closing Cooperation. The Company covenants and agrees to reasonably cooperate with the Company Stockholder, at the Company Stockholder's sole cost and expense, to enforce the Company's rights under the Stock Purchase Agreement dated as of December 7, 2010 among the Company and the other parties signatory thereto (the "Redemption Agreement") against the other parties signatory thereto for purposes of enforcing the Company's rights under Section 6.01(b) of the Redemption Agreement and any other provisions of the Redemption Agreement in connection therewith. The Company hereby covenants that any money recovered from the other parties signatory thereto in connection with the Company's enforcement of such rights under the Redemption Agreement shall be paid by the Company promptly upon receipt to the Company Stockholder, subject to the Company's rights under Article 11 as a Purchaser Indemnified Party."

21. Amendment to Section 5.2(a). The first sentence of Section 5.2(a) of the Purchase Agreement is hereby amended and restated in its entirety to state the following:

"(a) Liability for Taxes. Except as set forth otherwise herein, the Sellers shall be liable for and pay any and all Taxes of and with respect to all the members of the Company Group that are attributable or allocable (each a "Seller Tax Liability") to (i) any taxable period that ends on or before the Closing Date, including, for the avoidance of doubt, the taxable year of SGI terminating and ending at the end of the day immediately prior to the date of the conversion described in Section 4.12 (each, a "Pre-Closing Tax Period"), or (ii) the portion of any Straddle Period ending on the Closing Date."

22. Amendment to Section 5.2(c). The last sentence of Section 5.2(c) of the Purchase Agreement, which read "Notwithstanding the foregoing and for the avoidance of doubt, the Sellers and the Purchaser agree that the taxable year of SGI shall terminate and end at the end of the day before the Closing Date for federal income Tax purposes and, to the extent applicable, for state and local Tax purposes." is hereby deleted in its entirety.

23. Amendment to Section 5.2(e)(iii). Section 5.2(e)(iii) of the Purchase Agreement is hereby amended to replace the two references to "the Trust Account Agreement" with references to "Section 2.3 and the Trust Account Agreement".

24. **New Section 5.2(h)**. New Section 5.2(h) is hereby added to the Purchase Agreement, which provides as follows:

"(h) Allocation of Contributed Stock Value. The Purchaser and the SGI Stockholder agree to allocate the Contributed Stock Value (and all other capitalized costs) among the assets of SGI in accordance with the allocation reasonably determined by the Purchaser under Section 1060 of the Code and the Treasury Regulations issued thereunder ("**Allocation**"). The Purchaser and the SGI Stockholder shall report and file all Tax Returns (including any amended Tax Returns and claims for refund) consistent with the Allocation, and neither the Purchaser nor the SGI Stockholder shall take a position contrary thereto or inconsistent therewith (including, without limitation, in any audits or examinations by any Governmental Authority or any other proceedings), except to the extent required to comply with applicable Law. The Purchaser and the SGI Stockholder shall cooperate in the filing of any forms (including IRS Form 8594 to the extent required) with respect to the Allocation, including any amendments to such forms required with respect to any adjustment to the Contributed Stock Value, pursuant to this Agreement. Notwithstanding anything in this Agreement to the contrary, the foregoing covenant shall survive the Closing."

25. **Amendment to Section 6.18(a)**. The following sentence is hereby added to the end of Section 6.18(a) of the Purchase Agreement:

"(a) SGI LLC has, at all times since its creation, had a good and marketable title to, or a valid leasehold interest in, the Assets held or used by it, located on its premises or acquired by it at any time since its inception, free and clear of all Encumbrances or restrictions on transfer, except for Permitted Encumbrances."

26. **Amendment to Sections 6.18(t), (u), (v), (w) and (x)**. Section 6.18(t) of the Purchase Agreement is hereby amended by deleting the word "and" at the end of such Section. Sections 6.18(u) and (x) of the Purchase Agreement are hereby amended by replacing the period at the end of each such Section with a semicolon. Sections 6.18(v) and (w) of the Purchase Agreement are hereby amended and restated in their entirety to state the following:

"(v) SGI has, at all times since its formation, been and will, up to and including the day immediately prior to the date of its conversion described in Section 4.12, be a "small business corporation" within the meaning of Section 1361(b) of the Code and has had and will have in effect at all times from and after its formation and up to and including the day immediately prior to the date of its conversion described in Section 4.12, a valid election under Section 1362(a) of the Code, and validly has been and will be treated during such period in a similar manner for purposes of the income Tax Laws of all state and local jurisdictions in which it has been subject to taxation where such treatment is legally available;

(w) At all times since its formation and up to and including the day immediately prior to the date of its conversion described in Section 4.12, (i) SGI has had only one class of stock outstanding (treating for this purpose all classes of stock having identical rights to current and liquidating distributions as a single class, regardless of differences in voting power), (ii) SGI does not and has not had any outstanding options, contracts, indebtedness or other instruments or

obligations which could constitute a second class of stock within the meaning of Section 1361(b)(1)(D) of the Code and Treasury Regulations Section 1.1361-1(l), (iii) there have been no binding agreements among SGI and its shareholders or other "governing provisions" within the meaning of Treasury Regulations Section 1.1361-1(l)(2)(i) that caused any of the outstanding capital stock of SGI to have different per share rights to distribution or liquidation proceeds from any other share of then outstanding capital stock, and (iv) all distributions by SGI with respect to its stock described in Section 1368(a) of the Code have been proportional to the ownership of the capital stock of SGI outstanding at the time of each such distribution. No Seller has taken or omitted or caused to be taken or omitted to be taken any actions which would cause SGI to cease to be treated prior to the date of its conversion described in Section 4.12 as a "small business corporation" within the meaning of Section 1361(b) of the Code for federal and applicable state and local income Tax purposes."

27. <u>Amendment to Section 6.18</u>. The following is hereby added to the end of Section 6.18 of the Purchase Agreement:

"(y) SGI has, since its conversion described in Section 4.12, been and will, up to and including the Closing Date, be a single-member limited liability company; and

(z) SGI has not made, at any time since its conversion described in Section 4.12, and will not make, at any time up to and including the Closing Date, any entity classification elections under Treasury Regulation Section 301.7701-3 and has, since its conversion described in Section 4.12, been and will, at all times up to and including the Closing Date, be treated as disregarded as an entity separate from its owner within the meaning of Treasury Regulation Section 301.7701-3."

28. <u>Amendment to Section 9.2(a)</u>. Section 9.2(a) of the Purchase Agreement is hereby amended and restated in its entirety to state the following:

"(a) original certificates representing all of the Purchased Stock and SGI Stock, if any, which certificates shall be either duly endorsed for transfer, accompanied by stock powers executed in blank or accompanied by a limited liability company unit assignment agreement, as applicable;"

29. <u>Amendment to Section 10.2(d)</u>. Section 10.2(d) of the Purchase Agreement is hereby amended to replace the reference to "Company Stockholder" with a reference to "SGI Stockholder".

30. <u>Amendment to Sections 11.1(d) and (e) and Addition of New Section 11.1(f)</u>. Section 11.1(d) of the Purchase Agreement is hereby amended by deleting the word "and" at the end of such Section. Section 11.1(e) of the Purchase Agreement is hereby amended by deleting the period at the end of such Section and adding at the end the following "; and". New Section 11.1(f) is hereby added immediately after Section 11.1(e) of the Purchase Agreement, as follows:

"(f) any representation, certification or claim made by the Company to any Governmental Authority with respect to its ownership of Torres International LLC and/or Torres International Services LLC, the lawsuit filed by Torres Advanced Enterprise Solutions LLC

against the Company and disclosed on Schedule 6.19 and the termination of Contract W52P1J-11-D-0044 as disclosed on Schedule 6.28(a)(4)."

31. Amendment to Section 11.4(c). Section 11.4(c) of the Purchase Agreement is hereby amended to replace the phrase "(including the Initial Holdback Amount and the Trust Account Amount)" with the phrase "(including the Initial Holdback Amount, the Trust Account Amount and the amount of the Mezzanine Note)". In addition, the following is hereby added to the end of Section 11.4(c) of the Purchase Agreement:

"The Sellers shall not be required to indemnify any other Person under Section 11.1(f) for any costs and expenses unless and until the aggregate amount of all costs and expenses for which indemnity would otherwise be payable by the Sellers under Section 11.1(f) exceeds $500,000; thereafter, the Sellers shall be responsible for all such amounts in excess of $500,000 (the "Torres Expenses Indemnity"). The Sellers shall not be required to indemnify any other Person under Section 11.1(f) for any Losses other than costs and expenses unless and until the aggregate amount of all such Losses other than costs and expenses for which indemnity would otherwise be payable by the Sellers under Section 11.1(f) exceeds $2,000,000; thereafter, the Sellers shall be responsible for all such amounts in excess of $2,000,000 (the "Torres Indemnity"). In no event shall the Sellers obligations with respect to the Torres Expenses Indemnity and Torres Indemnity exceed, in the aggregate, an amount equal to the aggregate Base Purchase Price and Redemption Purchase Price actually paid to the Sellers (including the Initial Holdback Amount, the Trust Account Amount and the amount of the Mezzanine Note)."

32. Amendment to Section 11.4(j). Section 11.4(j) of the Purchase Agreement is hereby amended to replace the phrase "provided, however, that with respect to any Seller Indemnification Obligations for which recovery may be available from the Trust Account pursuant Section 2.3(b), the Purchaser Indemnified Parties shall first seek recourse against the Trust Account, in accordance with the terms and conditions of the Trust Account Agreement" with the phrase "provided, however, that with respect to any Seller Indemnification Obligations for which recovery may be available from the Trust Account or the Mezzanine Note pursuant Section 2.3, the Purchaser Indemnified Parties shall first seek recourse against the Trust Account and the Mezzanine Note, in accordance with the terms and conditions of the Trust Account Agreement and Section 2.3".

33. Amendment to Section 11.5. Section 11.5 of the Purchase Agreement is hereby amended to replace the reference to "the Trust Account Agreement" with a reference to "Section 2.3 and the Trust Account Agreement".

34. Amendment to Section 11.6. Section 11.6 of the Purchase Agreement is hereby amended to replace the two references to "the Trust Account Agreement" with references to "Section 2.3 and the Trust Account Agreement".

35. This Amendment may be executed in any number of counterparts, each of which shall constitute an original instrument, but all of which when taken together shall constitute but one Amendment.

36. This Amendment shall be governed in all respects by the Laws of the State of Delaware without regard to the principles of conflicts of Law thereunder.

*[signatures follow on the next page]*

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the date first written above.

COMPANY:

SALLYPORT GLOBAL HOLDINGS INC.

By: _____
Name: Thomas J. Campbell
Title: Chairman

SGI:

SALLYPORT GLOBAL LLC

By: _____
Name: Thomas J. Campbell
Title: Chairman

SELLERS:

THE JOHN DEBLASIO CHARITABLE TRUST FOR WORLD PEACE AND DEVELOPMENT

By: _____
Name: _____
Title: _____

JOHN P. DEBLASIO TRUST

By: _____
Name: _____
Title: _____

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the date first written above.

COMPANY:

SALLYPORT GLOBAL HOLDINGS INC.

By: _____
Name: _____
Title: _____

SGI:

SALLYPORT GLOBAL LLC

By: _____
Name: _____
Title: _____

SELLERS:

THE JOHN DEBLASIO CHARITABLE TRUST FOR WORLD PEACE AND DEVELOPMENT

By: _____
Name: _____
Title: _____

JOHN P. DEBLASIO TRUST

By: _____
Name: Pasquale DeBlasio
Title: trustee

PURCHASER:

SALLYPORT HOLDINGS LLC

By: _____
Name: Thomas J. Campbell
Title: Chairman

KASEMAN, LLC

By: _____
Name: Thomas J. Campbell
Title: Chairman

_____
John P. DeBlasio

D.C. CAPITAL PARTNERS INVESTMENTS, L.L.C.

By: _____
Name: Thomas J. Campbell
Title: Managing Member

Exhibit A

Schedule 2.4

Capitalized terms used on this Schedule 2.4 and not otherwise defined shall have the respective meanings provided in the Agreement.

|  |  | The John Deblasio Charitable Trust for World Peace and Development | John P. Deblasio Trust |
|---|---|---|---|
| Stock |  | 10,000 shares | n/a |
| Redeemed Stock |  | 8,450 | n/a |
| Purchased Stock |  | 1,550 | n/a |
| Rollover Stock / SGI Stock |  | N/A | 10,000 membership units |
|  | Total |  |  |
| Base Purchase Price | $6,200,000 | $6,200,000 |  |
| Redemption Purchase Price | $54,500,000 | $54,500,000 |  |
| Contributed Stock Value | $3,800,000 |  | $3,800,000 |
| *Membership Interests Issued* | 38% |  | 38% |
| Subtotal: | $64,500,000 | $60,700,000 | $3,800,000 |
| *Less* Closing Date Indebtedness | $0 |  |  |
| *Less* Transaction Expenses | $114,738 | $114,738 |  |
| *Less* Initial Holdback Amount | $4,000,000 | $4,000,000 |  |
| *Less* Trust Account Amount | $5,000,000 | $5,000,000 |  |
| *Less* Mezzanine Note Amount | $5,000,000 | $5,000,000 |  |
| *Less* Deferred Amount | $2,000,000 | $2,000,000 |  |
| Total at Closing: | $48,385,262 | $44,585,262 | $3,800,000 |