E27WchaC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   THOMAS W. CHARRON, Jr.,
    Individually, and as Trustee
4   of the Thomas W. Charron, Jr.,
    Grantor Retained Annuity
5   Trust, dated July 8, 2010,

6              Plaintiff,

7         v.                          12 CV 6837 (WHP)

8

9   SALLYPORT GLOBAL HOLDINGS,
    INC., et al.,

10             Defendants.

11  ------------------------------x
                                     New York, N.Y.
12                                   February 7, 2014
                                     11:30 a.m.
13
    Before:
14
                   HON. WILLIAM H. PAULEY III,
15
                                        District Judge
16

17                      APPEARANCES

18  BAILEY & GLASSER LLP
         Attorneys for Plaintiff
19  BY:  ATHANASIOS BASDEKIS
         BRIAN A. GLASSER
20
    HUSCH BLACKWELL LLP
21       Attorneys for Defendants
    BY:  BRIAN P. WAAGNER
22

23

24

25

                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

E27WchaC

```
 1              (Case called)
 2              THE COURT:  Good morning.
 3              MR. BASDEKIS:  Good morning.  Athanasios Basdekis and
 4     Brian Glasser, from Bailey & Glasser, for the plaintiff.
 5              MR. WAAGNER:  Good morning, your Honor.  Brian
 6     Waagner, on behalf of defendants.
 7              THE COURT:  I have various motions in limine before
 8     me.  Who wants to be heard?
 9              MR. BASDEKIS:  Your Honor, we have one pending motion
10     in limine and I believe it presents a straightforward issue and
11     so it makes sense to us to begin with that motion.
12              This is a motion which seeks to exclude the testimony
13     of any other expert witness or any other expert opinion
14     testimony other than the testimony of Jim Hitchner, who is the
15     one expert that the defendants retained in this case.  Under
16     Rule 26, obviously, a party's got to disclose the identity of
17     the expert witnesses to be used during a case and also at
18     trial.  Moreover, a witness not disclosed under Rule
19     26(a)(2)(A), may not provide opinion testimony based on
20     scientific, technical, or specialized knowledge.  That's Rule
21     701(c).
22              Defense in this case disclosed one expert, Jim
23     Hitchner.  They now apparently also seek to include expert
24     testimony from Andy Smith, Tom Campbell, Doug Lake, and Scott
25     Gold.  We've argued Hitchner should be the only one to present
```

E27WchaC

1    testimony related to the value of SGH, the value of KSI, or the

2    role of Brathwaite.

3            THE COURT:  Aren't these witnesses fact witnesses?

4            MR. BASDEKIS:  I do agree that they're fact witnesses,

5    your Honor, and as a fact witness, they can provide certain

6    testimony about the facts, historical facts.  Take, for

7    example, did this witness receive a copy of management

8    projections.  Well, that's a fact, yes or no.  And as a fact

9    witness, he can testify to that.  Similarly, to get to one of

10   the core matters, I'm at $3.8 million.  We know the parties

11   assigned a value of $3.8 million to the rollover equity

12   interest.  That's a fact also.  But what's different is to take

13   that second item, 3.8 million, you say it's assigned, but then

14   for the witness to then go further and say, And I believe this

15   is a reasonable number and represents a fair number in this

16   case is an attempt to give an expert opinion on that and to

17   look at the analysis that he performed in order to come to that

18   conclusion of what the value of the rollover equity is, when

19   that's clearly based solely on scientific, technical, or

20   specialized knowledge.  You can't do a business valuation

21   without having that kind of expertise.

22           THE COURT:  Is it your position that any statement by

23   one of these witnesses about the value of Sallyport is expert

24   testimony?

25           MR. BASDEKIS:  About any kind of methodology to arrive

E27WchaC

at a conclusion for what they believe the enterprise value, the

answer to that is yes, your Honor, I do believe that's expert

testimony.

        We obviously put out our expert report.  We have two

expert witnesses; we put them out.  And a month later, month

and a half later, defense had an opportunity to present a

witness to testify about those things.  They picked Jim

Hitchner.  Now, Mr. Hitchner is going to testify about the $3.8

million, what he believes the reasonable value of the overall

project was, the enterprise value.  He can do all of those

things.  We have no qualm with Mr. Hitchner doing that.  What

we're saying is if you had wanted to also have Andy Smith, Tom

Campbell, Doug Lake, and Scott Gold come in and give testimony

about that, you should have disclosed it at the same time you

disclosed Hitchner.  Instead, they went with Hitchner, and so

we shouldn't have to defend against basically five expert

witnesses trying to back over expert witness testimony.  The

facts are fine, it's just when they take those facts and they

put a scientific financial spin on it to come to a particular

conclusion, Mr. Hitchner can do that, but these witnesses

should not be allowed to do it.

        THE COURT:  But if your argument is that defendants

undervalued DeBlasio's interest in the transaction, don't the

defendants have to put on fact witnesses to show how they

arrived at that value?

E27WchaC

1          MR. BASDEKIS:  I think they put on expert witnesses to

2     say what the enterprise value is.  I don't think it's a factual

3     issue.

4          THE COURT:  That's what this trial is all about.

5     That's why we're having a trial.  I think that your motion is

6     really premature.  You can raise objections if questions are

7     posed seeking expert testimony, but it's premature to determine

8     now whether defendants' fact witnesses will necessarily give

9     expert testimony.  It's got to be taken in context.

10          Mr. Waagner, will these witnesses be testifying

11     generally about how a company is valued?

12          MR. WAAGNER:  Your Honor, we're not planning to offer

13     them as expert witnesses *per se*.

14          THE COURT:  Would you just answer my question.  Are

15     these witnesses going to be testifying generally about how a

16     company is valued?

17          MR. WAAGNER:  I have a hard time giving a yes-or-no

18     answer to that question because their testimony encompasses

19     some of that scope, but we're not intending to offer their

20     testimony as expert opinion on those subjects.  Let me give you

21     specifics to sort of put that in context.  I think the main

22     witness that really is addressed by this motion is Andy Smith.

23     Andy Smith was a principal at the McLean Group who was retained

24     by DC Capital Partners after the acquisition of Sallyport

25     Global Holdings to do some what would be regarded as business

E27WchaC

valuation practice, and he assisted in connection with the

preparation of a purchase price allocation.  The plaintiff has

identified ten or 12 of his reports and draft reports as

exhibits in this case.  Those are subject to our separate

motion *in limine*.  And the plaintiff's expert, Mr. Risius,

spends a great deal of time relying on the analysis that

Mr. Andy Smith did and criticizing his analysis.

          Our view is that we can't draw the line between Andy

Smith's testimony as a fact witness and where he may delve into

expert opinion, but that issue is going to be presented at the

trial.  That's why I think your Honor has it right that it's

premature.  To the extent that Andy Smith is going to be

testifying about his reports and the contents of his analysis,

Andy Smith ought to be able to explain why he did certain

things.  In our separate motion *in limine*, the plaintiff wants

to have Andy Smith's reports admitted into evidence as

admissions of fact, and they want to have those documents taken

as true, admitted as fact, but deny Andy Smith the ability to

explain them and illustrate why one may not lead to the

conclusion that the plaintiff draws.  That's all we're saying.

          THE COURT:  All right.  Do you want to turn to your

motions?

          MR. WAAGNER:  Yes, your Honor.  Thanks.

          We have two motions.  The first one that I'll talk

about is the question of these what we call third-party

E27WchaC

1    declarations of value.  There's the McLean reports, the drafts,

2    and spreadsheets and whatnot that Andy Smith prepared that are

3    part of that motion, but we also have the indications of

4    interest that were submitted by third-party companies that were

5    investigating a possible acquisition of Sallyport in 2010.  We

6    have the Jeffries presentations that were prepared in October,

7    November of 2011.  We have the McLean reports.  We also have

8    the McGladrey documents, spreadsheets and work papers that

9    McGladrey prepared in connection with his audit of the

10   acquisition after the acquisition.

11          Our concern with all of those documents is that they

12   are hearsay and that the only reason that the plaintiff would

13   offer them is to prove the truth of their contents.  The

14   indications of interest, for example, are inquiry letters,

15   essentially, from third parties saying we're interested in

16   pursuing a possible acquisition of these companies, and there

17   are dollar figures stated in those letters.  The plaintiff, in

18   our view, wants to use those dollar figures as proof of what

19   Sallyport was worth at the time.  To the extent that they are

20   third-party statements that have that information in them, they

21   are clearly hearsay prepared by third parties out of court.

22   There's no indication of trustworthiness with respect to those

23   documents.

24          THE COURT:  But in a bench trial, doesn't that really

25   just go to the weight?

E27WchaC

1              MR. WAAGNER:  It doesn't go to the weight.  It may go

2       to the weight with respect to the expert analysis, and I want

3       to point out to your Honor the decision that was cited in one

4       of the briefs, the <u>Williams v. United States</u> case, the 2012

5       decision by Justice Alito.  That's a case where the issue was

6       whether the expert witness could testify to something that had

7       not separately been offered and admitted into evidence.

8       Ultimately, the court said yes, he could testify to that fact,

9       but the court lays out a sequence of instructions for why that

10      wouldn't be improper.  The argument at the Supreme Court was

11      you can't let the expert witness be a conduit for the admission

12      of inadmissible testimony, and Justice Alito's opinion says,

13      Yes, in cases where you have jury trials you have one set of

14      issues and in cases where you have bench trials you have

15      another set of issues.  And you certainly trust the trial judge

16      as the fact finder and as the arbiter of what weight to give

17      evidence, but the instruction from the Supreme Court is in a

18      case where the expert witness is relying on evidence that has

19      not been separately admitted, there wouldn't be any basis to

20      give any weight to that expert testimony at all.

21              What we're trying to do is point to the fact that

22      these third-party indications of value are worthless in our

23      view.  They're not worthy of being admitted into evidence.

24      They're not worthy of having Mr. Risius rely on them, etc.  And

25      the only purpose for the plaintiff identifying them as exhibits

E27WchaC

```
 1    and then trying to deem them admissions or business records and
 2    have them be used for any purpose is just so Mr. Risius can
 3    say, Here you go, my opinion is consistent with everybody
 4    else's reasonable opinions and the reason I know that they're
 5    reasonable is because all of these third parties came up with
 6    this same analysis.
 7              THE COURT:  Aren't documents from the McLean Group and
 8    McGladrey admissible under the case law about auditors being
 9    agents?
10              MR. WAAGNER:  I don't think so, your Honor.  And we
11    have not objected to their final reports, recognizing that
12    those reports would come into evidence on that basis.  What
13    we're trying to make a distinction on with respect to McLean
14    and McGladrey is the drafts.  There was a period of four or
15    five months where these documents were works in progress, and
16    numbers change, comments appear in them, and the only witness
17    testimony about those drafts is Andy Smith's testimony that
18    those drafts do not reflect my opinion.  And so in our view, I
19    understand why you might want to use drafts to cross-examine
20    the witness on the credibility of a conclusion in the final
21    report.
22              THE COURT:  That all goes to weight though, doesn't
23    it?  You can challenge that at the trial.
24              MR. WAAGNER:  But the concern that we have is that the
25    admissibility of those documents without a witness to explain
```

E27WchaC

1    them, they're admitted for any purpose if they're admitted, in

2    essence.

3              THE COURT:  They're your agent, aren't they?

4              MR. WAAGNER:  The other distinction that I'd like to

5    draw with respect to their being an agent is they're not just

6    doing a task dictated by the principal.  This is an expert

7    analysis.  You don't hire a business valuation expert to render

8    an opinion on business valuation issues.  Andy Smith's analysis

9    is the main concern here, and Andy Smith's analysis is the

10   analysis of an expert.  I call up a plumber and say, Do I need

11   to replace this pipe in my house, and the plumber says yes, I

12   have one plumber that says yes and I have one plumber says no,

13   the fact that I had one plumber say yes doesn't mean I admitted

14   that the pipe needs to be replaced.  That's the plumber's

15   opinion.  That's a very close analogy here.

16             Andy Smith was asked to give an opinion and to render

17   a report that could be useful to the client in connection with

18   their analysis.  The final report is that.  We have not

19   objected to Andy Smith's final report being admitted into

20   evidence.  It's the drafts, and all of the Jeff Risius analysis

21   draws from the drafts.  In this spreadsheet, there's a cell

22   that has the following figure and that figure means X, Y, and Z

23   consequences flow from it.  And all we're saying is without a

24   witness there to explain that or respond to that, the

25   prejudicial effect and the fact that those documents can't be

1    taken for what they appear to be is unfair.  It's the hearsay

2    problem principally, but it's also a problem of using expert

3    opinion, which Andy Smith's analysis was.  The Jeffries'

4    analysis certainly would be analogous to the plumber, Here's

5    what we think.

6         THE COURT:  Jeffries is not analogous to a plumber.

7    Jeffries was hired to represent DC Capital Partners, right?

8    Isn't that an agency relationship?

9         MR. WAAGNER:  The record is entirely unclear as to

10   exactly why Jeffries was hired, what Jeffries did, etc.  What

11   we have in the record is four reports or presentations from

12   Jeffries that purport to be sales presentations, and the

13   testimony about them was that they were sales presentations.

14   This isn't an expert analysis.  It isn't an opinion.  It isn't

15   an admission.  It's Jeffries trying to advocate that the

16   company would be able to sold for a high price, and so it can't

17   be taken as an admission or as evidence that the company was,

18   in fact, worth that.  And we've cited the cases that say that.

19   The investment banker's opinions, the real estate valuation

20   opinions are not evidence of value.  They are, at best, an

21   opinion of one person at one point in time as to what might be

22   able to be achieved in the future.

23        We gave the example of a real estate agent putting

24   your house up for sale for a million dollars and it's on the

25   market for a year and you can't sell it for a million dollars.

E27WchaC

1   Does that mean you admitted that the house is worth a million

2   dollars?  No.

3            THE COURT:  Once again, that goes to weight, and this

4   is a bench trial.

5            MR. WAAGNER:  Part of the reason that we have to raise

6   this issue ties in to the second motion, the second motion

7   dealing with who is actually going to be here to testify.

8   There isn't a Jeffries person that's going to be here

9   necessarily.  The only person that's identified on the

10  plaintiff's witness list is a designated representative of

11  Jeffries.  We challenge the sufficiency of plaintiff's use of

12  designated representative in 11 cases and then as well as the

13  plaintiff's plan to take 25 *de bene esse* depositions at some

14  point before the trial.

15           THE COURT:  Look, we discussed this back in November.

16  This was all about authenticity of documents, wasn't it?

17           MR. GLASSER:  Yes, sir.

18           MR. WAAGNER:  But our view is there's more to the

19  question of authenticity and admissibility of these documents

20  than just establishing that it was generated by somebody that

21  worked for Jeffries.  That doesn't meet the evidentiary burden

22  in this case.  There's too much opinion and there's too much

23  conjecture.  It's not an ordinary business record.  It's not an

24  admission of fact.  It's a third party's statement of opinion,

25  and without that witness to explain what it is and to be there

E27WchaC

```
 1    to be cross-examined about what conclusions can properly be
 2    drawn from that, the only thing we have is Jeff Risius, who is
 3    going to act as a conduit for the admissibility of this
 4    improper evidence.  And that's the issue that we're really
 5    trying to address.
 6            The final element of our motion on the witnesses, the
 7    plaintiff here is challenging the potential that there might be
 8    expert testimony from one or more of our fact witnesses.
 9    Plaintiff has identified three experts on its witness list,
10    three experts who did not issue reports.
11            THE COURT:  Forget about that.
12            MR. GLASSER:  We're withdrawing it.
13            THE COURT:  Right.  They're out.
14            MR. GLASSER:  Does the Court want to hear from the
15    plaintiff, or is the Court satisfied?  I can talk to each of
16    those, the LOIs, Jeffries and McLean and McGladrey, if the
17    Court would like to hear.
18            In respect of the indications of interest, your Honor,
19    there were like eight of them between 90 and $110 million.
20    They were received by our client, Tom Charron, as well as their
21    client, the defendant.  I do plan to put them in evidence with
22    Tom Charron when he's testifying, and it informs why he
23    believed windfall protection was important in this case for him
24    because he was selling for 40 and he thought the company was at
25    least worth a hundred, so it puts in context exactly why
```

E27WchaC

1   there's a windfall protection clause at issue in the whole

2   case.  So that's the way I foresee the indications of interest

3   coming into evidence from a man who received them, was an

4   officer of the company at the time he received them.  I don't

5   think there's much to debate about those.

6          THE COURT:  It's all a question of how reliable they

7   are, and that will be a subject for cross-examination.  There's

8   no *per se* rule that would bar indications of interest to

9   determine value, is there, Mr. Waagner?

10         MR. WAAGNER:  I would cite two *per se* rules.  One is

11  the rule against hearsay and the other is the series of cases

12  that we've cited from the Southern District, from the U.S.

13  Supreme Court, and other places which directly address the

14  question of whether unconsummated offers are evidence of value.

15  The case law is uniform that they do not reflect evidence of

16  that.

17         THE COURT:  What about the cases that say in a bench

18  trial, it's better to admit documents than exclude them because

19  the Court knows what weight to give to them?

20         MR. WAAGNER:  Your Honor, I certainly respect the

21  power of the trial court to recognize the difference between

22  evidence worthy of weight and evidence that's not worthy of

23  weight.  We haven't hidden the ball from the Court with respect

24  to what these documents are, and certainly we're asking the

25  Court to make that distinction.  What's important from my

E27WchaC

1    perspective is that we recognize those documents as not

2    evidence that the company was worth 90 to $100 million, as

3    Mr. Glasser suggests.  That's the purpose that he's trying to

4    offer them.  That's the purpose that Mr. Risius cites them for.

5           THE COURT:  He just said that he's offering it for the

6    purpose of showing that this is why Mr. Charron wanted the

7    special protection, because his state of mind was such that the

8    company was worth more than a hundred million.  Certainly it

9    comes in for that purpose.  What weight I'm going to give to

10   it, whether it was reasonable for Mr. Charron to believe that,

11   is what this trial is about.

12          MR. GLASSER:  In respect, just to move down, if the

13   Court wants to hear, McLean is obviously coming in because it

14   is the source of the $3.8 million asserted value to the

15   rollover equity.  Jeffries, your Honor, was as of the next day.

16   So the McLean report is as of June 29, 2011.  The Jeffries

17   presentation to the board is as of June 30, and it's a value 20

18   times higher.  Now, our expert is actually below the Jeffries

19   value by a substantial margin in this case, but I think that it

20   is probative evidence as to what was going on at the time.

21   They are literally 24 hours apart in as of valuation dates.

22   And under Rule 703, our expert has looked at these things, has

23   considered them.  They are the normal type of thing an expert

24   looks at.  When an expert has two valuations on the very

25   problem he's facing from two experts in the field, they would

E27WchaC

1    be remiss not to look at them.

2              THE COURT:  Anything else?

3              MR. GLASSER:  And then McGladrey, you've already made

4    our point, Judge, about it being the auditor's papers that are

5    typically admissible.

6              THE COURT:  What about all these *de bene esse*

7    depositions?

8              MR. GLASSER:  Your Honor, I have looked very hard at

9    what we need.  I plan to do this case in four positive

10   witnesses.  Mike O'Connor, the lawyer who did the  SPA; Tom

11   Charron, the client; two experts, and then adversely John

12   DeBlasio and Pat DeBlasio.  That would be our case.  These

13   things, if they can come in through my expert, then I don't

14   need any *de bene esse* depos.  If the issue is authenticity,

15   then I would need to subpoena a Jeffries custodian of records

16   to say that in response to our subpoena, they gave us the

17   Jeffries report and, therefore, it's authentic.  So the only

18   ones at issue, if authenticity is at issue, is I would subpoena

19   a corporate rep of BoNY, Jeffries, and McGladrey, who are all

20   in New York, to testify that they received the subpoena, they

21   gathered their records, they produced them and these are them.

22   And then McLean, I think, is outside the power of the Court, so

23   that would be the only *de bene esse*, and it would be a

24   15-minute deposition of a person to authenticate the records.

25   That's it.

E27WchaC

1          THE COURT:  Is there really any dispute about the

2     authenticity of the documents?

3          MR. WAAGNER:  I don't think there is any dispute about

4     the authenticity.  The question is should we admit into

5     evidence third-party declarations out of court that are clearly

6     hearsay and opinions that, in my view, are entitled to so

7     little weight they shouldn't be admitted in evidence at all.

8     That's the reason I referenced the <u>Williams</u> case, which says

9     that you can't allow Mr. Risius to be a conduit for this

10    inadmissible evidence.  And that's exactly what's going on

11    here.  Mr. Risius is going to say my opinion is reasonable

12    because Jeffries came up with a much higher opinion.  That is

13    classic, in my opinion, It's reasonable because I said so.

14         THE COURT:  All right.  But Jeffries was hired to

15    represent DC Capital.  That's an agency relationship.

16         MR. WAAGNER:  Your Honor, in my view, the record is

17    not clear as to exactly the nature of the engagement between

18    Jeffries and DC Capital.  Certainly prepared that document.

19         THE COURT:  Plaintiff will have to lay the foundation.

20    I mean, you could bring somebody in from Jeffries to undermine

21    the documents if they don't collapse of their own weight.

22         MR. WAAGNER:  Just briefly, your Honor, in response to

23    Mr. Glasser's comment on the witnesses that he intends to put

24    his case through, that's part of the reason we raised this

25    motion, because his witness list has 35 individuals on it.

E27WchaC

1          THE COURT:  We're down to four plus the DeBlasios.

2          MR. WAAGNER:  Thank you.

3          THE COURT:  You gentlemen have previously told me that

4    you'll take four days to try this case.  You're going to get

5    four days to try this case because I'm starting a criminal jury

6    trial on Monday, March 31.  You're bringing people in from

7    around the country, so part of the purpose of this argument

8    today is to make sure that we're all on the same wavelength

9    about how this trial's going to proceed.

10         In that regard, let me say the following.  First of

11   all, we'll start at 9:45 in the morning and we'll try the case

12   until 5:00.  We'll take an hour lunch, from one to two.  We'll

13   take a short midmorning and midafternoon recess.  We'll work

14   longer or start earlier if I feel it's necessary, so counsel

15   should be prepared to work past 5:00.

16         Cross-examination of a witness will be wide open, so

17   it will not be limited to the scope of direct, but redirect

18   will be limited to the scope of cross, and so on.  So don't

19   plan on calling a witness twice.  In other words, if the

20   plaintiff calls Mr. DeBlasio, be prepared, Mr. Waagner, to

21   examine Mr. DeBlasio fully on cross-examination, and that's how

22   we'll proceed.

23         We're not going to have document dumping in this case

24   into the record.  I'm not going to receive into evidence any

25   exhibit that isn't discussed by a witness because that just

E27WchaC

1     invites too much mischief on appeal.

2              Don't run out of witnesses.  If you run out, you'll

3     rest.  We'll move on.

4              At the conclusion of the trial, I'll have you submit

5     on a schedule proposed findings of fact and conclusions of law.

6     Each of you will make simultaneous submissions to me and then

7     you'll have a very brief response to each other's submissions.

8              If you need access to any electronic material in the

9     courtroom, make the appropriate arrangements.  Notify my deputy

10    so that it's provided so that there is no confusion about

11    what's going to go on during the course of the trial.

12             Obviously, with respect to the defendants' motion to

13    exclude Steinkamp, Sanna and Ziobrowski, that's withdrawn and a

14    good thing because I grant it in a moment.

15             MR. WAAGNER:  Your Honor, that motion was not

16    withdrawn.

17             MR. GLASSER:  No, no.  I'm confessing it.  I agree.

18    We'll withdraw.

19             THE COURT:  I heard him say it was withdrawn.

20             Didn't you withdraw it a few minutes ago?

21             MR. GLASSER:  I withdrew the request to bring the

22    witnesses in the face of a well pled motion, your Honor.  I

23    don't know that he withdrew his motion.  I'm saying that I

24    agree that the motion will knock off the witnesses.

25             THE COURT:  All right.

1          MR. WAAGNER:  I apologize.  There's another motion *in*

2    *limine* the plaintiff separately withdrew in writing, and I was

3    just confused as to what you were talking about.

4          THE COURT:  With respect to defendants' motion to

5    exclude evidence of third-party declarations of value, that

6    motion is denied.  The evidence includes documents prepared by

7    Jeffries LLC and the McLean Group, investment banks that were

8    hired by DC Capital Partners, and by McGladrey, an auditor

9    hired by DC Capital Partners.  A statement offered against a

10   party is admissible if it "was made by the party's agent or

11   employee on a matter within the scope of that relationship and

12   while it existed."  Federal Rule of Evidence 801(d)(2)(D).  "An

13   agency relationship results from a manifestation of consent by

14   one person to another that the other shall act on his behalf

15   and subject to his control and the consent by the other to

16   act."  N.Y. Marine & General Insurance Company v. Tradeline,

17   L.L.C., 266 F.3d 112, 122 (2d Cir. 2001).  Courts in this

18   district have held that a party's auditors are agents for the

19   purposes of Rule 801(d)(2)(D).  See MBIA Insurance Corp. v.

20   Patriarch Partners VIII, LLC, 2012 WL 2568972 at *4 (S.D.N.Y.

21   July 3, 2012); Four Joint Boards Health & Welfare & Pension

22   Funds v. Penn Plastics, Inc., 864 F.Supp. 342, 352, n. 14

23   (S.D.N.Y. 1994).  Jeffries was engaged to help sell KS

24   International LLC and was therefore similarly an agent.

25          Of course, this will be subject to proof at trial,

E27WchaC

1   especially in light of Mr. Waagner's comments that there's a

2   dispute as to whether Jeffries was hired to represent DC

3   Capital Partners.  So those documents as well as the

4   indications of interest in purchasing Sallyport are admissible

5   under Rule 803(6).  They're business records prepared in the

6   regular course of business.  Defendants argue that Rule 803(6)

7   applies only to clerical documents void of subjective opinions,

8   but the very text of Rule 803(6) states it applies to "a record

9   of an act, event, condition, opinion, or diagnosis."

10          Now, defendants also offer a number of reasons to

11   doubt the reliability of the documents at issue.  If this were

12   a jury trial, those objections might require close scrutiny,

13   but to the extent that any document is unreliable or does not

14   fit comfortably within 801(d)(2)(D) or 803(6), defendants'

15   motion is still denied because it's a bench trial.  "It may be

16   the more prudent course in a bench trial to admit into evidence

17   doubtfully admissible records and testimony based on them," so

18   says the Second Circuit, which grades my papers.  Van Alen v.

19   Dominick & Dominick, Inc., 560 F.2d 547, 552 (2d Cir. 1977).

20   See also Dreyful Ashby, Inc. v. S/S "ROUEN", 1989 WL 151685 at

21   *2 (S.D.N.Y. Dec. 12, 1989).

22          In a bench trial, the district court can hear relevant

23   evidence, weigh its probative value, and reject any improper

24   inferences.  Schultz v. Butcher, 24 F.3d 626, 632 (4th Cir.

25   1994).  On cross-examination, this Court is confident that the

E27WchaC

1   defendants can demonstrate why any particular document may not

2   be a reliable indication of value or is otherwise unworthy of

3   the Court's consideration.  Both parties are free to raise

4   their objections at trial where I'll be able to consider them

5   in context.

6           The time for sparring in this case, and there has been

7   a lot of it, is nearing an end, and I want to tell you that I

8   expect the trial to proceed smoothly, without unending

9   arguments about things that are ridiculous, like 40 *de bene*

10  *esse* depositions or experts who might be called in rebuttal but

11  never filed expert reports, or other things like that.

12          I want it to be a pleasant experience for all of us.

13  That's going to be in your hands.

14          Anything further?

15          MR. GLASSER:  Yes, your Honor.  Since I've spent the

16  week before this hearing making the hard calls about who we're

17  really going to call and how many witnesses and how to get this

18  done in the time the Court has provided, I don't want to put

19  Mr. Waagner on the spot, but I would appreciate it if sometime

20  in the reasonable near future, he could do the same for me,

21  tell me who they're going to call and what witnesses they're

22  going to have.  Then we can make the trial move faster, have

23  everything ready, no fumbling around.  So I just make that

24  request.

25          THE COURT:  Do you want to give me a hint at this

E27WchaC

1     juncture as to who you're going to call, Mr. Waagner, other

2     than the six people who have been identified here by plaintiff?

3             MR. WAAGNER:  My basic plan is set out in our witness

4     list in the pretrial order, John DeBlasio, Pat DeBlasio,

5     Mr. Hitchner.  I've also included Tom Campbell and Doug Lake,

6     Tom Campbell and Doug Lake both from DC Capital Partners.  At

7     this point, I'm debating whether to have one of the lawyers

8     from Cohen & Grigsby, who was involved in this agent

9     litigation, testify.  It would probably Morgan Hanson if that's

10    the case.  Andy Smith will probably testify from the McLean

11    Group.  And possibly Peter Phelps, who was the CFO of

12    Sallyport.

13            THE COURT:  All right.

14            MR. GLASSER:  Very good.  Thank you, your Honor.

15            Thank you, Mr. Waagner.

16            THE COURT:  Obviously, if your list changes, I think

17    you should let the plaintiff know, and it would be helpful to

18    the Court let's say a week before trial to get the parties'

19    final, real lists.  I expect the parties to share with each

20    other the order in which they're going to call people so that

21    there will be no surprises on any of that.  If someone has

22    travel difficulties, we'll interrupt testimony.  We'll work

23    with witnesses to try to accommodate their schedules, but it's

24    in all of our interests to get the case tried and done in the

25    time that's been allotted.

E27WchaC

 1              Are there any other questions about how the trial's

 2     going to proceed?

 3              MR. GLASSER:  The only one I would have, your Honor,

 4     is if the Court prefers to just have the exhibits

 5     electronically on a jump drive or something, or do you

 6     physically want them moving around the courtroom?

 7              THE COURT:  Look, if you want to set up computer

 8     equipment, we do it all the time, and it can be a lot easier

 9     for a jury.  Judging from the summary judgment motions in this

10     case, there's a lot of paper, but most of it's not going to be

11     what this case turns on, so let's focus on what is really

12     important in the case.

13              Are all of these witnesses going to be testifying

14     live?

15              MR. GLASSER:  Yes, sir.  I believe so.

16              THE COURT:  All right.  If there's any deposition

17     testimony that's going to be offered that's not being offered

18     for impeachment purposes, it's going to have to be read in

19     court.  In other words, just like there won't be document

20     dumps, there won't be deposition dumps into the record.

21              Any other questions about how the trial's going to

22     proceed?

23              MR. GLASSER:  None from the plaintiff, your Honor.

24              MR. WAAGNER:  None from the defendants, your Honor.

25     Thank you.

E27WchaC

```
 1              THE COURT:  All right.  I'll see you all on March 24.
 2   Get me a letter about anything else that might arise by March
 3   17, starting with what the order of witnesses is going to be, a
 4   final exhibit list, and you all know there are many exhibits
 5   that you're both going to be dealing with.  Just agree on one
 6   set of numbers so we're only admitting an exhibit once, and I
 7   don't care whose exhibit it is.  The plaintiff should use
 8   numbers, the defendants should use letters.  Premark them, and
 9   if you want to do it electronically, that's fine.  If you're
10   bringing electronic equipment in, you need to obtain an order
11   from me in the form that's provided on the court's Web site.
12   Be mindful of that.  All right?
13              MR. GLASSER:  Yes, sir.  Thank you.
14              THE COURT:  You all came to New York on a good weather
15   day today.  You're lucky.  Maybe you could be lucky and settle
16   the case.  Have a good weekend.
17              (Adjourned)
18
19
20
21
22
23
24
25
```