**TOR EKELAND, P.C.**
ATTORNEYS AT LAW

TOR EKELAND
tor@torekeland.com
(718) 285 9343 phone
(718) 504-5417 fax

October 28, 2014

**VIA FEDEX & EMAIL**

Honorable Judge William H. Pauley III
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *Charron, et al. v. Sallyport Global Holdings, Inc., et al.*
      Index No.: 12-cv-6837

Dear Judge Pauley:

     This Firm represents Mark C. Henderson and Margaret M. Henderson, who wish to file a motion to intervene in the above-named case. Per Your Honor's Individual Practices, we are filing this letter in order to request a pre-motion conference to determine whether Mr. and Ms. Henderson will be permitted to file a motion to intervene. We make this request for the following reasons.

     Pursuant to Fed. R. Civ. P. 24(a)(2) and 24(b)(2), the proposed Intervenors request permission to move this Court for leave to intervene in this action as of right, as Third Party Plaintiffs, or, in the alternative, movant seeks permissive intervention as Third Party Plaintiffs.

**I.   Background**

     This action arises out of substantially the same facts and circumstances of the initial action as outlined in Plaintiff Thomas W. Charron Jr.'s First Amended Complaint. Defendant DeBlasio's initial buy-in to become a "50/50 owner" of Sallyport Global Holdings,Inc. ("Sallyport") (Plaintiff's First Amended Complaint, ¶ 2) came from collateral that Defendant DeBlasio sourced and misappropriated from Black Knight Partners ("BKP") and Illinois Land Trust 2561 ("ILT"), of which Defendant DeBlasio was an officer and beneficiary.

     Mr. and Ms. Henderson look to intervene in the above-named action to protect their financial interests and those of BKP and ILT, which were defrauded by Defendant DeBlasio to fund Sallyport and its related business. BKP was created in 2002 with Mr. Henderson and Defendant DeBlasio as its founding members as 50/50 partners. BKP was an instrument to serve the exclusive mutual and beneficial interests of the beneficiaries of ILT.

     Around that same time, in June 2002, Mr. DeBlasio and his then wife Francis joined ILT as full and equal beneficiaries, as part of BKP's acquisition of a commercial property. Defendant, his then wife, and Plaintiff-Intervenors are each 25% partners in ILT.



In May of 2007, during a routine credit renewal at BKP and ILT's partner bank, Mr. Henderson discovered that BKP's equity may have been entirely cross-collateralized, possibly by Defendant DeBlasio.

In December 2010, Defendant DeBlasio made false and fraudulent claims to bank officers and others claiming he held 75-100% ownership of ILT, and used BKP and ILT collateral for purchasing Sallyport shares under the Share Purchase Agreement between Charron and Sallyport. While a first loan in 2004 for this purpose was approved by the board as a means to purchase John Olvey's shares in Sallyport Global for a reported 50% shared interest. Later loans were neither approved nor even disclosed to the board of BKP or the beneficiaries of ILT. A police investigation revealed further joint loans taken out by BKP and its bank corresponding to Defendant Sallyport's key dates.

a. As alleged in Plaintiff's Complaint, John DeBlasio removed approximately $4.5 million from Sallyport's assets in June 2010 (See: Plaintiff's Complaint, ¶ 38). Around this same time, approximately $4 million in collateral statements were released from ILT.

b. As of today, Plaintiff-Intervenors Mr. and Ms. Henderson have received no accounting or other financial transparency on this collateral or other financial actions.

## II. Mr. Henderson Satisfies the Requirements for Intervention as Set Forth in Fed. R. Civ. P. 24(a)(2) and 24(b)(1)

Fed. R. Civ. P. 24(a) provides, in relevant part:

> Upon timely application anyone shall be permitted to intervene in any action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2).

An applicant may be permitted to intervene under Rule 24(b) of the Federal Rules of Civil Procedure, at the discretion of the court, if its application is timely, the applicant "has a claim or defense that shares with the main action a common question of law or fact," and "the intervention will [ not] unduly delay or prejudice the adjudication of the original parties' rights." Fed.R.Civ.P. 24(b).

"Timeliness defies precise definition, although it certainly is not confined strictly to chronology." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). Beyond chronology, a court should consider: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any



delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *Id.*

     Mr. Henderson has lacked sufficient information to bring this lawsuit until August 2014, when he received documents under a FOIA request to the Plainfield, IL police department and spoke with an Illinois State Attorney. Also in August 2014 Mr. Henderson received attorney-client documents from BKP's former attorney. These documents secured by BKP attorneys, Freeborn & Peters, reveal Defendant John DeBlasio's instructions to intentionally conceal information from Mr. and Ms. Henderson including knowledge of the pending 2011 sale transaction. While Mr. Henderson was attempting to evaluate his legal claims, he continued to request information from the banks in order to better understand Mr. DeBlasio's actions, to no avail. Only after these attempts failed did Mr. Henderson realize that he would need to file a lawsuit. At this point he realized Mr. Charron's claims closely mirrored his own.

     No parties will be prejudiced by allowing Plaintiff-Intervenors to intervene. Mr. Charron's purpose in filing the action was to demand an accounting of the sale price of Sallyport in order to determine whether it constituted a "windfall" sale under the stock purchase agreement. Mr. Henderson wishes to intervene in order to ensure that his rights are preserved as the source of the funds John DeBlasio used to purchase Sallyport.

     Plaintiff-Intervenors' rights may be harmed if not allowed to intervene. The third element of the intervention as of right standard is met where intervenors demonstrate that, absent intervention, the disposition of the action may, as a practical matter, impede or impair their interests. *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). If not allowed to intervene, the Plaintiff-Intervenors' rights, and those of BKP and ILT, will be irreparably harmed, and it will be far more difficult if not impossible to determine what portion of the Sallyport sale is attributable to DeBlasio's fraudulent loans.

     Wherefore, it is requested that Mr. Henderson and Mrs. Henderson be permitted to intervene pursuant to either Fed.R.Civ.Pro. 24(a)(2) or 24(b), or in the alternative that the Court schedule a pre-motion conference to discuss the matter further.

Respectfully submitted,

/s/

Tor Ekeland

Cc, via FedEx and email:

Athanasios Basdekis                        Elizabeth Godofsky Leavy
Brian A. Glasser                               Michael Gatje
James B. Perrine                              Thomas F. Rath
Brian P. Waagner                            Omri E. Praiss
Daniel P. Jaffe